IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  06-cv-02303-WYD-MJW

RALPH MERCADO,

Plaintiff,

v.

R. WILEY,
R. HOOD,
M. BARBEE,
R. BAUER,
CHUCK TURNER,
MARK MASER,
JOHN DOE #1,
JO WADAS,
H. TRAPP,
R. CURRIN,
RALPH SMITH,
HARRELL WATTS,
JOHN OR JANE DOE #2,
UNKNOWN CRAWFORD,
UNKNOWN HAVERY [sic], and
JOHN DOE #3,

Defendants.

_____

RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (Docket No. 73)
_____

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

        This case is before this court pursuant to an Order of Reference to Magistrate

Judge issued by Chief Judge Wiley Y. Daniel on April 18, 2008.  (Docket No. 63).

**<u>PLAINTIFF'S ALLEGATIONS</u>**

        The pro se incarcerated plaintiff alleges the following six claims in his First

Amended Prisoner Complaint (Docket No. 25), which is brought pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971):

1. **Exposure to chemical fumes.**  On March 16, 2004, when defendants Turner, Maser, and John Doe #1 of the ADX Facilities Department completed a work order by removing and replacing a water heat exchanger in plaintiff's unit, chemical fumes were released into the ventilation system that exposed plaintiff to an unreasonable risk of serious damage to his health and safety.  These defendants showed deliberate indifference toward plaintiff's medical needs by ignoring the safety requirements and procedures when handling and disposing of propylene glycol when they poured it down the floor drain.  Defendant Barbee had a duty to ensure that such a chemical exposure does not occur and a duty to train and supervise all officers properly regarding chemicals that pose a health or safety risk to ADX prisoners.

2. **Denial of medical care.**  At about 10:05 a.m., on March 16, 2004, plaintiff activated the panic button and informed the responding officer, defendant Wadas, that plaintiff has asthma, he activated the button because of his difficulty breathing due to the chemical fumes, and he needed medical attention.  Wadas stated he informed the medical department of the plaintiff's medical emergency and told plaintiff he personally informed Ms. H. Trapp of the plaintiff's medical emergency.  Trapp, an ADX nurse practitioner, failed to respond.

At around 10:35 a.m., defendants Currin and Smith noticed plaintiff on his cell floor having difficulty breathing and questioned plaintiff's health.  Plaintiff notified them

he was asthmatic and having serious difficulties breathing. They stated they would call for a P.A.

Plaintiff was denied medical care and left in his cell suffering an asthma attack, unable to communicate with prison staff because the panic button was not reset. He went into complete respiratory failure and was unconscious on his cell floor for four hours. None of the defendants who were notified about the emergency medical situation stayed with plaintiff until medical help arrived, reset his panic button, checked on his medical status, removed him to an unpolluted area, and ensured he received medical treatment.

Plaintiff now suffers from headaches, nose bleeds, leg numbness, difficulty sleeping, nightmares, cold chills, breathing problems, and a heart condition.

**3. Conspiracy.** Defendant Watts, the Central Office Administrator for the Bureau of Prisons ("BOP") administrative remedies, made several false statements in his response to plaintiff's grievance. The record indicates that Watts' response was dated September 3, 2004 (Docket No. 3). First, Watts falsely stated that plaintiff's asthma attack resolved through the use of his inhaler. Second, he incorrectly wrote that facility staff stated that inhibited propylene glycol is used at the institution, whereas a memo dated June 22, 2004, stated that the chemical was propylene glycol. According to plaintiff, the name was changed to downplay the dangers it posed. Third, plaintiff's oxygen level on the day he attended sick call was 92 percent, but during Watts' investigation, an alteration was made on the records by defendant John or Jane Doe #2 such that the oxygen level was reported as 98 percent. This purportedly was another attempt to downplay the danger.

**4. Second chemical exposure.** On April 17, 2006, at around 1:30 p.m. unknown fumes started to enter plaintiff's cell from the unit's ventilation system, which posed a serious danger to the plaintiff's health and safety because of his asthma. Defendants Wiley and Barbee violated their duties as required by BOP policies and the law to ensure the safety of their confined prisoners at ADX and to ensure that all of their officers are properly trained and supervised when handling any element that has potential to jeopardize the health and safety of the prisoners.

**5. Second denial of medical care.** Plaintiff activated the panic button on April 17, 2006. Defendant Crawford acknowledged the duress call. Plaintiff informed her of his asthma and that he was having impaired breathing due to unknown fumes entering the cell. Plaintiff requested immediate removal from his cell to an unpolluted area, which would have been the outside recreation area. Contrary to defendant ADX Warden Wiley's claim in his response to plaintiff's grievance, Crawford did not notify the medical department of the plaintiff's breathing difficulties. Three other inmates tried to notify Crawford about the seriousness of plaintiff's condition. Defendants Havery and John Doe #3 arrived on the range to return prisoners to their cells, ignored plaintiff's pleas for help, and left plaintiff suffering an asthma attack, which caused him to pass out.

**6. Second conspiracy.** On June 14, 2006, defendant Wiley made false statements in his written response to plaintiff's grievance. First, Wiley falsely stated that the staff member assigned to the control center on April 17, 2006, notified Health Services, whereas the ADX Medical Records Officer stated on June 19, 2006, that

Crawford did not notify anyone within the Medical Department on April 17, 2006, of the plaintiff's medical need. Second, Wiley falsely stated that plaintiff was not moved to an outside recreation area as demanded due to the lack of established procedures or documentation authorizing plaintiff to be placed in an outside recreation area when experiencing an asthma attack. BOP policies, however, require immediate medical treatment for inmates who suffer asthma, which is a life-threatening condition. Therefore, established procedures were established. Wiley deliberately attempted to conceal and cover up the true facts of Crawford's actions on April 17, 2006.

Plaintiff seeks declaratory, injunctive, and monetary relief, including punitive damages.

## DEFENDANTS' MOTION TO DISMISS

Now before the court for a report and recommendation is the Defendants' Motion to Dismiss (Docket No. 73). Plaintiff has filed a response. (Docket No. 86). The court has carefully considered the motion and response as well as the court's file and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and recommendation.

Defendants Barbee, Bauer, Crawford, Currin, Harvey, Masar, Smith, Turner, Wadas, Watts, and Wiley,[1] through counsel, seek dismissal of the plaintiff's claims pursuant to Fed. R. Civ. P. 12(b)(6) on the following grounds: (1) Claims One, Two, and Three are barred by the statute of limitations; (2) Claim Three is barred for failure to

---

[1]Defendants Hood and Trapp have not been served because plaintiff has not provided the court with their addresses. Instead, he stated "addresses unknown" on his pleading. (Docket No. 25 at 3, 4).

exhaust administrative remedies; (3) Claims Four and Five are barred by qualified immunity; and (4) this court lacks personal jurisdiction over defendant Watts.

For purposes of a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pled factual allegations in the complaint as true and resolve all reasonable inferences in the plaintiff's favor.  Morse v. Regents of the Univ. of Colo., 154 F.3d 1124, 1126 (10th Cir. 1998); Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  A motion to dismiss pursuant to Rule 12(b)(6) alleges that the complaint fails "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "A complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) if it does not plead 'enough facts to state a claim to relief that is plausible on its face.'"  Cutter v. RailAmerica, Inc., 2008 WL 163016 (D. Colo. Jan. 15, 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . .  Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."  Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic

Corp., 127 S. Ct. at 1974).

Since the plaintiff is proceeding without counsel, his pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

**Statute of Limitations**

Defendants assert that the plaintiff has failed to bring his first three claims within the applicable statute of limitations. "A *Bivens* claim is subject to the general personal injury statute of limitations of the state where the claim arose. . . . Colorado's general statute of limitations for personal injury claims provides that a claim must be brought within two years after the action accrues." Trujillo v. Simer, 934 F. Supp. 1217, 1226 (D. Colo. 1996). "Federal law, not state law, controls the issue of when a federal cause of action accrues. . . . The statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action. . . . A plaintiff has reason to know of his injury when he should have discovered it through the exercise of reasonable diligence." Industrial Constructors Corp. v. U. S. Bureau of Reclamation, 15 F.3d 963, 968-69 (10th Cir. 1994) (citations omitted).

Under the prison "mailbox rule," the Complaint should be deemed "filed" at the moment of its delivery to prison authorities for forwarding to the District Court. <u>See Houston v. Lack</u>, 487 U.S. 266 (1988). Here, the original Prisoner Complaint was allegedly executed by plaintiff on October 27, 2007 (Docket No. 3 at 12), and the Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915 that apparently was sent to the court with the original Complaint was allegedly executed on October 31, 2007 (Docket No. 1). Defendants contend that plaintiff's first three claims, which concern an incident that allegedly occurred on March 16, 2004, and a conspiracy on or before September 3, 2004, are barred by the statute of limitations. Absent some form of tolling of the limitations period, this court agrees with defendants' argument.

The issue of tolling is also governed by state law. <u>Fratus v. DeLand</u>, 49 F.3d 673, 675 (10th Cir. 1995). "A plaintiff bears the burden of establishing that the statute has been tolled." <u>McGee v. Hardina</u>, 140 P.3d 165, 168 (Colo. App. 2005). Here, plaintiff seems to assert that the limitations period was tolled while his previous action was pending in this court and in the Circuit and while he exhausted his administrative remedies. Plaintiff notes that all three of the claims at issue were originally contained in a Complaint filed in this court in November 2005, Civil Action No. 05-cv-02306. Approximately five months later, his action was dismissed under the total exhaustion rule under the PLRA, which was subsequently abrogated by the U.S. Supreme Court in <u>Jones v. Bock</u>, 549 U.S. 199 (2007). Plaintiff claims he filed an appeal on the entire dismissal of his action prior to the <u>Jones v. Bock</u> ruling to protect Claims One and Two from being time-barred upon reentering this court after exhausting Claim Three. In addition, he asserts he filed a number of motions to stay the first two claims, which were

denied by this court. Plaintiff claims he "merely followed the procedures chosen by this court for curing the initial civil action deficiencies, the plaintiff did return and filed all three claims within (30) days from the final exhaustion date on claim three." (Docket No. 86 at 3).

The court takes judicial notice of the docket in plaintiff's previous case and finds as follows. The original Complaint in Civil Action No. 05-cv-02306 was allegedly executed on October 15, 2005 (Docket No. 3 at 25). Judge Weinshienk dismissed the action on April 5, 2006. (Docket No. 17). Plaintiff filed a motion for a stay and abeyance on April 17, 2006 (Docket No. 20), which was denied the next day (Docket No. 21). He filed a motion for the same relief on October 11, 2006 (Docket No. 36), which was denied the following day (Docket No. 37). On December 4, 2006, the Tenth Circuit Court of Appeals filed its Mandate affirming the judgment of the district court and denying the plaintiff's motion for leniency. (Docket No. 40). As noted above, plaintiff's original Complaint in the current action was purportedly executed on October 27, 2007 (Docket No. 3 at 12).

Plaintiff's limitation period was not tolled by the Colorado statute. Plaintiff was not "a minor under eighteen years of age, a mental incompetent, or a person under other legal disability." Fogle v. Pierson, 435 F.3d 1252, 1258 (10th Cir. 2006) (citing § 13-81-101(3), C.R.S.). "No Colorado court has held that an imprisoned person fell into the 'other legal disability' category." Id. at 1258 n.2. Furthermore, in Colorado, "[g]enerally when a statute does not specifically allow for the tolling of a statute of limitations during the pendency of a prior action, a party cannot deduct from the period of the statute of limitations applicable to his case the time consumed by the pendency of

an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice as to him." <u>King v. W. R. Hall Transp. & Storage Co.</u>, 641 P.2d 916, 920 (Colo. 1982). <u>See</u> <u>SMLL, L.L.C. v. Peak Nat. Bank</u>, 111 P.3d 563, 565 (Colo. App. 2005) ("Absent a specific statutory provision, Colorado law does not allow for the tolling of a statute of limitations during the pendency of a prior action."); <u>Chilcott Entertainment L.L.C. v. John G. Kinnard Co.</u>, 10 P.3d 723, 726 (Colo. App. 2000) ("[T]he Colorado Supreme Court has stated that, absent a specific statutory provision, Colorado law does not allow for the tolling of a statute of limitations during the pendency of a prior action.") (citing <u>King</u>, 641 P.2d 916; <u>Brown v. Hartshorne Pub. Sch. Dist. #1</u>, 926 F.2d 959 (10th Cir. 1991) (in absence of statute to the contrary, limitation period not tolled during pendency of dismissed action); <u>Cook v. G.D. Searle & Co.</u>, 759 F.2d 800 (10th Cir. 1985) (recognizing that Colorado law indicates a policy disfavoring tolling by mere pendency of prior action)).

"The closest statute on this issue is Colo.Rev.Stat. § 13-80-111, which permits a plaintiff to re-file an action within ninety days of the termination of an original action for lack of jurisdiction or improper venue. Failure to exhaust administrative remedies in a *Bivens* action is not a jurisdictional issue." <u>Phillips v. Harrison</u>, 2005 WL 1773952, *2 n.4 (D. Colo. July 26, 2005). Plaintiff's prior action in this court was not terminated based upon lack of jurisdiction or improper venue. Therefore, the limitations period was not tolled during the pendency of that action by virtue of § 13-80-111. <u>See</u> <u>Nguyen v. Swedish Med. Ctr.</u>, 890 P.2d 255, 256 (Colo. App. 1995) ("[I]nasmuch as plaintiff's first action was dismissed for a procedural defect, not for lack of jurisdiction, the remedial revival statute was inapplicable to plaintiff's second complaint.").

Colorado does recognize "the doctrine of equitable tolling, which applies when flexibility is required to accomplish the goals of justice, such as when plaintiffs did not timely file their claims because of extraordinary circumstances or because defendants' wrongful conduct prevented them from doing so." Fogle v. Pierson, 435 F.3d at 1258 (quotations omitted). No such circumstances have been presented here.

The court notes, however, that "[t]he majority of circuits to address the issue have concluded that the statute of limitations applicable to a § 1983 action must be tolled while a prisoner completes this mandatory administrative remedy exhaustion process." Smith v. Ortiz, 2006 WL 620871, *4 (10th Cir. Mar. 14, 2006) (and cases cited therein) (declining to decide the issue because the issues were untimely even with such tolling). The same would hold true for Bivens claims. Roberts v. Barreras, 109 Fed. Appx. 224, 226 (10th Cir. Aug. 16, 2004) ("Every circuit to address the issue has held that the filing of a mandatory administrative grievance tolls the statute of limitations for § 1983 and Bivens claims."). The Tenth Circuit does not appear to have decided this legal issue. By tolling the statute of limitations for the time periods during which plaintiff exhausted his claims, plaintiff's claims are not time barred.[2] Therefore, following the majority of courts, this court does not recommend dismissal of the plaintiff's first three claims based upon the running of the statute of limitations.

---

[2]Plaintiff's first grievance was dated April 8, 2004 (Docket No. 3 at 24), and the final administrative decision was dated almost five months later on September 3, 2004 (Docket No. 3 at 29). Plaintiff's second grievance was dated April 14, 2006 (Docket No. 3 at 33), and the final administrative decision was dated almost six months later on October 11, 2006 (Docket No. 3 at 38).

**Failure to Exhaust**

The Prison Litigation Reform Act ("PLRA"), *inter alia*, amended 42 U.S.C. §
1997e(a) to require a prisoner to exhaust "such administrative remedies as are
available" before suing over prison conditions.  This exhaustion requirement "is
mandatory, and the district court [is] not authorized to dispense with it."  Beaudry v.
Corrections Corp. of Am., 331 F.3d 1164, 1167 n.5 (10th Cir. 2003).  Section "1997e(a)'s
exhaustion requirement applies to all prisoners seeking redress for prison
circumstances or occurrences."  Porter v. Nussle, 534 U.S. 516, 520 (2002).   "[T]he
failure to exhaust is an affirmative defense under the PLRA, and . . . inmates are not
required to specially plead or demonstrate exhaustion in their complaints."  Jones v.
Bock, 549 U.S. at 216.  As an affirmative defense, exhaustion must be raised and
proven by the defendants.  Roberts v. Barreras, 484 F.3d 1236, 1241 (10th Cir. 2007).
"[O]nly in rare cases will a district court be able to conclude from the face of the
complaint that a prisoner has not exhausted his administrative remedies and that he is
without a valid excuse."  Freeman v. Watkins, 479 F.3d 1257, 1260 (10th Cir. 2007)
(quoting Aquilar-Avellaveda v. Terrell, 478 F.3d 1223, 1225 (10th Cir. 2007)).  "Jones
suggests that district courts can dismiss prisoner complaints for failure to state a claim if
it is clear from the face of the complaint that the prisoner has not exhausted his
administrative remedies."  Aquilar-Avellaveda, 478 F.3d at 1225.

The BOP has a four-step procedure for prisoner grievances.  First, in most cases
the prisoner is required to seek informal resolution of his complaint.  28 C.F.R. § 542.13.
If the complaint is not resolved informally, the prisoner should then address his
complaint through a written Administrative Remedy Request on a "BP-9" form.  28

C.F.R. §§ 542.13, 542.14. If the prisoner is dissatisfied with the response from the Warden, the prisoner then submits an appeal to the appropriate Regional Director on a "BP-10" form. 28 C.F.R. § 542.15(a). If dissatisfied with the Regional Director's response, the prisoner then submits an appeal to Office of the General Counsel on a "BP-11" form. See 28 C.F.R. § 542.15.

Here, defendants assert in their motion to dismiss that plaintiff has failed to exhaust his administrative remedies concerning Claim Six in which plaintiff alleges that in June 2006 defendant Wiley made false statements in his written response to plaintiff's Administrative Remedy Request. Defendants state that the plaintiff has not presented an Administrative Remedy at any of the Administrative Remedy levels pertaining to Warden Wiley's alleged false statements. Therefore, they contend that Claim Six should be dismissed.

In plaintiff's response, plaintiff points the court to his Regional Administrative Remedy Appeal and the Regional Response which he contends "clearly proves the plaintiff did present an administrative remedy on Claim Six against warden Wiley false statements." (Docket No. 86 at 7). Plaintiff's response, however, supports defendants' showing that plaintiff has not presented Claim Six through all of the requisite administrative steps; at best, he merely presented the claim at the third step of the review process. Therefore, it is recommended that Claim Six be dismissed without prejudice for failure to exhaust.

**<u>Lack of Personal Jurisdiction Over Defendant Watts</u>**

Defendants assert that the court lacks personal jurisdiction over defendant Harrell Watts, the BOP's National Inmate Appeals Administrator. Plaintiff states in his

Amended Complaint that Watts' office is located in Washington, D.C. (Docket No. 25 at 5). Defendants assert that plaintiff has not alleged facts stating that Watts had sufficient contacts with Colorado to support personal jurisdiction.

"To satisfy the constitutional requirement of due process there must be 'minimum contacts' between the defendant and the forum state." Bell Helicopter Textron, Inc. v. Heliqwest Intern., 385 F.3d 1291, 1295 (10th Cir. 2004). "The burden of establishing personal jurisdiction over the defendant is on the plaintiff." Id. "The minimum contacts standard may be met in either of two ways. When the defendant has continuous and systematic general business contacts with the forum state, courts in that state may exercise *general jurisdiction* over the defendant. . . . When the defendant has purposely directed his activities at residents of the forum, courts in that state may exercise *specific* jurisdiction in cases that arise out of or relate to those activities." Id. (quotations and citations omitted).

This court finds that the plaintiff has failed to make a showing of the requisite minimum contacts by defendant Watts who merely responded to one of plaintiff's grievances. Furthermore, case law supports defendants' argument that Watts lacks the required minimum contacts with Colorado to satisfy Due Process. See, e.g., Barnes v. Jones, 2007 WL 628060 (D. Colo. Feb. 26, 2007) (Watts' administrative denials are insufficient to establish personal jurisdiction); Durham v. Lappin, 2006 WL 2724091 (D. Colo. 2006) (Finding no personal jurisdiction over Watts who signed off on denials of the plaintiff's grievances. "[T[he contacts of Defendant[] Watts . . . with Colorado are completely fortuitous, resulting from the fact that the *Plaintiff*-to whom they were responding when answering grievances-was located in Colorado."); Mansoori v. Lappin,

2005 WL 2387599 (D. Kan. Sept. 21, 2005) ("A defendant's [including defendant Watts]

contacts with the forum state that include signing the review of a plaintiff prisoner's

appeals and occasionally advising senior prison staff members are not sufficient

contacts to permit a court to exercise personal jurisdiction over such defendants.");

Cuoco v. Hurley, 2000 WL 1375273 (D. Colo. 2000) (finding no personal jurisdiction

over regional director who reviewed the plaintiff's appeal). This court thus recommends

that the plaintiff's claim against defendant Watts, which is contained in Claim 3, be

dismissed without prejudice.

### Qualified Immunity

Defendants also contend they are entitled to qualified immunity concerning

claims four and five.[3]  When a defendant raises a qualified immunity defense, the

plaintiff "bears the burden of showing that: (1) the defendants' actions violated a

constitutional or statutory right; and (2) the right was clearly established and reasonable

persons in the defendants' position would have known their conduct violated that right."

Cruz v. City of Laramie, Wyo., 239 F.3d 1183, 1187 (10th Cir. 2001).  "The judges of the

district courts and the courts of appeals should be permitted to exercise their sound

discretion in deciding which of the two prongs of the qualified immunity analysis should

be addressed first in light of the circumstances in the particular case at hand."  Pearson

---

[3]Defendants contend that the defense of qualified immunity would apply to all of
the defendants and claims, but since the defendants contend that only claims four and
five remain potentially viable, they addressed only those two claims in detail in their
motion and indicated they request the opportunity to file supplemental briefing
concerning the defense as to any claims deemed viable.  Rather than supplementing
the instant motion, defendants can move to dismiss those claim on qualified immunity
grounds at a later date.

v. Callahan, – S. Ct. --, 2009 WL 128768, at *9 (U.S. Jan. 21, 2009) (finding that the protocol required in Saucier v. Katz, 533 U.S. 194 (2001) no longer mandatory in all cases but is often beneficial).  "Qualified immunity balances two important interests–the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Id. at *6.  The Supreme Court has "made clear that the 'driving force' behind creation of the qualified immunity doctrine was a desire to ensure that '"insubstantial claims" against government officials [will] be resolved prior to discovery.'"  Id.  The Court has thus repeatedly stressed "the importance of resolving immunity questions at the earliest stage in litigation."  Id.

Claim Four.  "An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency.  The objective component requires conditions sufficiently serious so as to 'deprive inmates of the minimal civilized measure of life's necessities.' . . .  Alternatively, a condition must be sufficiently serious so as constitute a substantial risk of serious harm. . . .  The subjective component requires that a defendant prison official have a culpable state of mind, that he or she acts or fails to act with deliberate indifference to inmate health and safety."  Shannon v. Graves, 257 F.3d 1164, 1168 (10th Cir. 2001).  "There is no requirement that an inmate suffer serious medical problems before the condition is actionable. . . .  At the same time, the frequency and duration of the condition, as well as the measures employed to alleviate the condition, must be considered when considering the objective component."  Id.

As noted above, in his fourth claim for relief, plaintiff asserts that on April 17, 2006, around 1:30 p.m. unknown fumes started to enter plaintiff's cell from the unit's ventilation system, which posed a serious danger to the plaintiff's health and safety because of his asthma. Defendants Wiley and Barbee violated their duties as required by BOP policies and the law to ensure the safety of their confined prisoners at ADX and to ensure that all of their officers are properly trained and supervised when handling any element that has potential to jeopardize the health and safety of the prisoners.

With regard to this fourth claim, defendants assert that plaintiff alleges only that he was exposed to some "unknown fumes" but does not identify more than a potential injury and has failed to allege an actual injury, let alone a sufficiently serious one. As stated above, however, "[t]here is no requirement that an inmate suffer serious medical problems before the condition is actionable." Id. The condition of confinement merely must be "sufficiently serious so as constitute a substantial risk of serious harm." Id. Here, at least at this early stage, plaintiff has adequately plead enough facts to state a claim to relief that is plausible on its face that there was a substantial risk of serious harm from fumes coming through the ventilation system due to his asthmatic condition.

Defendants further contend that even assuming plaintiff suffered an actual injury, he fails to allege that defendants Wiley or Barbee failed to act out of a culpable mental state. Defendants assert that plaintiff's allegations are devoid of any allegations that either defendant was aware of the "unknown fumes." In addition, if they were aware of the "unknown fumes," there is no allegation that they posed a serious health risk. Defendants thus assert that "[b]ecause the allegations made in Claim Four are insufficient to state a claim for a condition of confinement claim based on the "unknown

fumes" of which there is no allegation that the defendants were aware, Claim Four should be dismissed in light of the defendants' qualified immunity." (Docket No. 73 at 9-10).

This court finds that while the plaintiff may be able to satisfy the objective component of an Eighth Amendment claim in his fourth claim for relief, he has not satisfied the subjective component as he has not alleged that defendants Wiley or Barbee acted with deliberate indifference insofar as this isolated incident of exposure to "unknown fumes" in his cell. Therefore, it is recommended that Claim Four be dismissed for failing to to state a claim upon which relief can be granted.

Claim Five. Defendants also contend that plaintiff fails to state an Eighth Amendment claim in Claim Five. As noted above, in that claim plaintiff asserts that he activated the panic button on April 17, 2006. Defendant Crawford acknowledged the duress call, and plaintiff informed her of his asthma and that he was having impaired breathing due to unknown fumes entering the cell. Plaintiff requested immediate removal from his cell to an unpolluted area, which would have been the outside recreation area. Contrary to ADX Warden defendant Wiley's claim in his response to plaintiff's grievance, Crawford did not notify the medical department of the plaintiff's breathing difficulties according to the ADX medical records officer. Three other inmates tried to notify Crawford about the seriousness of plaintiff's condition. Defendants Havery and John Doe #3 arrived on the range to return prisoners to their cells and ignored plaintiff's pleas for help and left plaintiff suffering an asthma attack which caused him to pass out.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ."

Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id. However, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. . . . The substantial harm may be satisfied by lifelong handicap, permanent loss, or considerable pain." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted).

"The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Id. As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] that the Defendants' delay in meeting that need caused him substantial harm. . . . Finally, to meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d at 1276-77 (quotations omitted).

Defendants assert that plaintiff alleges only that he suffered "impaired breathing due to unknown fumes," that he did not request emergency medical treatment, and that he requested only that he be moved out of his cell, yet he acknowledges that the only place to which he could have been moved was the outside recreation yards. Defendants contend that based on these allegations, it cannot be said that the plaintiff

was suffering from an objectively serious harm.  As noted above, however, the condition of confinement merely must be "sufficiently serious so as constitute a substantial risk of serious harm."  As found above with respect to Claim Four, this court finds, at least at this early stage, plaintiff has adequately plead enough facts to state a claim to relief that is plausible on its face that there was a substantial risk of serious harm.

Defendants further assert that even if it were assumed that these "unknown fumes" posed a serious medical risk, even if true, his allegations are insufficient to establish that defendant Crawford knowingly ignored a serious risk to plaintiff.  They assert there is no allegation that she refused to listen to his complaint or declined to act upon it.  Defendants contend plaintiff does not allege she was personally aware of the fumes at the times she responded to the duress call.  Moreover, they contend that given plaintiff's request that he be moved from his cell but did not request emergency medical intervention, it cannot be concluded that she was indifferent to a life-threatening or a potentially injurious medical situation on the facts as alleged.

This court, however,  finds that the plaintiff has, at least at this early stage of the litigation, plead "enough facts to state a claim to relief that is plausible on its face," regarding the subjective component so as to withstand a motion to dismiss pursuant to Rule 12(b)(6).  Bell Atlantic Corp. v. Twombly, 127 S. Ct. at 1974.  Plaintiff avers that Crawford did not notify the medical department of the plaintiff's breathing difficulties, even when three other inmates tried to notify Crawford about the seriousness of plaintiff's condition.  In addition, plaintiff alleges defendants Havery and John Doe #3 ignored plaintiff's pleas for help and left plaintiff suffering an asthma attack which caused him to pass out.  Therefore, this court recommends that Claim Five not be

dismissed at this time.

### Supervisory Liability

Defendants also assert that to the extent plaintiff asserts that any of the

defendants who held a supervisory position within the BOP should be held liable based

on their supervisory roles, such a claim is barred.  They note that plaintiff makes

allegations against the defendants holding supervisory positions (Wiley, Bauer, Turner,

and Watts), but his claims are not actionable based on their supervisory roles.

"Individual liability under § 1983 must be based on personal involvement in the

alleged constitutional violation."  Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997).

With regard to the liability of supervisors:

> Under § 1983, government officials are not vicariously liable for the
> misconduct of their subordinates.  "[T]here is no concept of strict
> supervisor liability under § 1983." . . .  "This does not mean that a
> supervisor may not be liable for injuries caused by the conduct of one of
> his subordinates.  It does mean that his liability is not vicarious, that is,
> without fault on his part." . . . .

> Supervisors are only liable under § 1983 for their own culpable
> involvement in the violation of a person's constitutional rights.  To
> establish supervisor liability under § 1983, "it is not enough for a plaintiff
> merely to show a defendant was in charge of other state actors who
> actually committed the violation.  Instead, . . . the plaintiff must establish 'a
> deliberate, intentional act by the supervisor to violate constitutional rights.'"
> . . .  In short, the supervisor must be personally "involved in the
> constitutional violation," and a "sufficient causal connection" must exist
> between the supervisor and the constitutional violation." . . . .

> In order to establish a § 1983 claim against a supervisor for the
> unconstitutional acts of his subordinates, a plaintiff must first show the
> supervisor's subordinates violated the constitution.  Then, a plaintiff must
> show an "affirmative link" between the supervisor and the violation,
> namely the active participation or acquiescence of the supervisor in the
> constitutional violation by the subordinates. . . .  In this context, the
> supervisor's state of mind is a critical bridge between the conduct of a
> subordinate and his own behavior.  Because "mere negligence" is not

enough to hold a supervisor liable under § 1983, a plaintiff must establish that the supervisor acted knowingly or with "deliberate indifference" that a constitutional violation would occur. . . .

Serna v. Colorado Dept. of Corrections, 455 F.3d 1146, 1151-52 (10th Cir. 2006) (citations omitted). Furthermore, even under the liberal pleading standards applied to pro se litigants, "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." Hall v. Bellmon, 935 F.2d at 1110.

This court finds that the plaintiff's bare allegations of supervisory liability fail. As stated above, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp., 127 S. Ct. at 1974 (citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. "[A] plaintiff must 'nudge [] [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss. . . . Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." Ridge at Red Hawk, L.L.C. v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting Bell Atlantic Corp., 127 S. Ct. at 1974).

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED** that the Defendants' Motion to Dismiss **(Docket No. 73)** be

**granted in part and denied in part**.  More specifically, it is recommended that Claim 6 be dismissed without prejudice for failure to exhaust administrative remedies; that plaintiff's claim against defendants Wiley, Bauer, Turner, and Watts be dismissed with prejudice; and that Claim 4 be dismissed with prejudice.  It is further recommended that the motion to dismiss be denied in all other respects.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have ten (10) days after service of this recommendation to serve and file written, specific objections to the above recommendation with the District Judge assigned to the case.  The District Judge need not consider frivolous, conclusive, or general objections.  A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, <u>Thomas v. Arn</u>, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions.  <u>Makin v. Colorado Dep't of Corrections</u>, 183 F.3d 1205, 1210 (10th Cir. 1999); <u>Talley v. Hesse</u>, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Date:  January 29, 2009           <u>s/ Michael J. Watanabe</u>
       Denver, Colorado            Michael J. Watanabe
                                    United States Magistrate Judge