IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02303-WYD-MJW

RALPH MERCADO,

    Plaintiff,

v.

JO WADAS,
H. TRAPP,
RALPH SMITH,
TIFFANY CRAWFORD, and
LLOYD HARVEY,

    Defendants.

---

# RECOMMENDATION ON
# DEFENDANT CRAWFORD'S MOTION FOR SUMMARY JUDGMENT
# (Docket No. 205),
# PLAINTIFF'S DECLARATION FOR ENTRY OF DEFAULT (Docket No. 210),
# and
# PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AGAINST DEFENDANT
# CRAWFORD (Docket No. 214)

---

**MICHAEL J. WATANABE**
**United States Magistrate Judge**

This case is before this court pursuant to an Order of Reference to Magistrate Judge issued by Chief Judge Wiley Y. Daniel on April 18, 2008. (Docket No. 63).

The time to complete discovery and to amend pleadings in this case has closed. A Final Pretrial Conference was conducted by this court on December 8, 2009 (Docket No. 201 - Courtroom Minutes/Minute Order), and a Final Pretrial Order has been filed

(Docket No. 202). A Final Trial Preparation Conference has been set for Tuesday, August 24, 2010, at 10:00 a.m., and a five-day jury trial has been set to commence on Tuesday, September 7, 2010, at 9:00 a.m. (Docket No. 207).

The pro se incarcerated plaintiff raised six claims in his First Amended Prisoner Complaint (Docket No. 25), which was brought pursuant to 28 U.S.C. § 1331 and <u>Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971). Pursuant to an Order Adopting and Affirming Magistrate Judge's Recommendation issued by Chief Judge Daniel on February 23, 2009, certain claims, including claims against four of the named defendants, were dismissed. In addition, plaintiff voluntarily dismissed his claims against defendant Hood. (See Docket Nos. 164 and 166).

Thereafter, on January 4, 2010, this court issued a Recommendation on Plaintiff's Motion for Summary Judgment (Docket No. 161) and Defendants' Motion for Summary Judgment (Docket No. 190). The latter motion was filed by defendants Barbee, Harvey, Masar, Smith, Trapp, and Wadas.[1] This court recommended that the plaintiff's Motion for Summary Judgment (Docket No. 161) be denied, that the plaintiff's claims against the John and Jane Doe defendants be dismissed *sua sponte*, and that the Defendants' Motion for Summary Judgment (Docket No. 190) be granted in part and denied in part. (Docket No. 208 at 19). More specifically, it was recommended that

---

[1] On November 12, 2009, a Suggestion of Death was filed by defense counsel pursuant to Fed. R. Civ. P. 25 which provided notice that defendant Russell Currin died on November 2, 2009. (Docket No. 186). Chief Judge Daniel has ordered Currin removed off the caption as a defendant because the Suggestion of Death has not been responded to or contested. (Docket No. 229 at 4).

summary judgment be granted to defendants Masar and Barbee. (Docket No. 208 at 19). Chief Judge Daniel affirmed and adopted that Recommendation on March 10, 2010. (Docket No. 229). Therefore, the only claims remaining are Claims Two and Five.

Now before the court for a report and recommendation are the following three motions: (1) Defendant Crawford's Motion for Summary Judgment, filed on December 14, 2009 (Docket No. 205), to which the plaintiff filed a response (Docket No. 213); (2) plaintiff's "Declaration for Entry of Default" (Docket No. 210), filed on January 7, 2010, which has been construed and docketed as a motion; and (3) plaintiff's Motion for Default Judgment Against Defendant Crawford (Docket No. 214), filed on January 19, 2010, to which defendant Crawford filed a response (Docket No. 219).

Since the plaintiff is proceeding without counsel, his pleading has been construed liberally and held to a less stringent standard than formal documents drafted by lawyers. See Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing Haines v. Kerner, 404 U.S. 519, 520-21 (1972)). Therefore, "if the court can reasonably read the pleadings to state a claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements. . . . At the same time, . . . it is [not] the proper function of the district court to assume the role of advocate for the pro se litigant." Id.

The court has carefully considered the motion papers, the court's file, and applicable Federal Rules of Civil Procedure and case law. The court now being fully informed makes the following findings, conclusions, and recommendations.

**PLAINTIFF'S MOTIONS FOR ENTRY OF DEFAULT AND FOR DEFAULT JUDGMENT**

On February 27, 2008, defendant Tiffany Crawford waived service. (Docket No. 50). By Minute Order entered by this court on April 24, 2008, Crawford and other defendants were given up to and including June 2, 2008, to answer or otherwise respond to the First Amended Prisoner Complaint. (Docket No. 66). On June 2, 2008, Crawford, along with other defendants, filed a Motion to Dismiss. (Docket No. 73). A ruling was made on that motion on February 23, 2009 (Docket No. 103), and Crawford, along with other defendants, filed an Answer to Complaint on March 10, 2009. (Docket No. 109).

In a Minute Order entered by this court on November 18, 2009 (Docket No. 193), this court granted Defendant Crawford's Motion for Extension of Time to File Dispositive Motion (Docket No. 187) and Defendant Crawford's Motion for Extension of Time to Respond to Plaintiff's Motion for Summary Judgment (Docket No. 189) and gave Crawford up to and including December 14, 2009, to file dispositive motions and to respond to plaintiff's motion for summary judgment. On December 14, 2009, Crawford filed her motion for summary judgment. (Docket No. 205). She did not file a separate response to the plaintiff's motion for summary judgment.

This court issued its report and recommendation on plaintiff's motion for summary judgment on January 4, 2010. (Docket No. 208). Later that same week, plaintiff filed a "Declaration for Entry of Default" (Docket No. 210). He subsequently filed a Motion for Default Judgment Against Defendant Crawford (Docket No. 214). In those two filings, plaintiff seeks entry of a default and a default judgment against Crawford based upon her failure to respond to his motion for summary judgment.

In her Response (Docket No. 219), Crawford notes that contrary to plaintiff's assertion that she did not respond to his motion for summary judgment, the docket reflects that she filed her own motion for summary judgment (Docket No. 205, filed on December 14, 2009). Crawford asserts that her motion contains admissible evidence, namely, her declaration, to create a material dispute of fact to preclude entry of summary judgment in plaintiff's favor. In addition, she asserts that other defendants previously argued in their motion for summary judgment that plaintiff's motion for summary judgment should not be granted against her. In support of this argument, Crawford cites Docket No. 191, p. 1, n.1 which states:

> Although Crawford and Currin have not joined in this response [to plaintiff's motion for summary judgment], the record, nevertheless contains sufficient evidence to create a dispute of fact as to plaintiff's claims against these defendants. *See, e.g.,* Plaintiff's Exhibit A-13, Response to Plaintiff's First Request for Admissions, which contains denials of wrongdoing by Currin. With respect to Crawford, who was working in the control center on April 17, 2006, Defendant Wadas's declaration (Exhibit 8) provides evidence that she could not have seen plaintiff in distress or left her post to assist him. Additionally, taken together, the statements by the other defendants that they did not witness any other staff member deny plaintiff medical assistance is sufficient to create a dispute of fact as to Defendants Currin and Crawford. Plaintiff's motion should be denied against them as well.

(Docket No. 191, at 1 n.1).

Rule 55(a) of the Federal Rules of Civil Procedure provides that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). In this case, defendant Crawford has not failed to plead or otherwise defend this action. As outlined above, she timely filed an Answer (Docket No. 109). In addition, Crawford timely filed her dispositive motion. (Docket No.

205). While technically and ideally Crawford should have also filed a response to the plaintiff's motion, this court does not recommend entry of judgment against Crawford based upon that failure because she has not failed to plead or otherwise defend, and she has not confessed plaintiff's motion as evidenced by her own motion for summary judgment. Therefore, it is recommended that plaintiff's "Declaration for Entry of Default" (Docket No. 210) and Motion for Default Judgment Against Defendant Crawford (Docket No. 214) be denied.

**<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

The only claim against Crawford is contained in Claim Five in which the plaintiff asserts the following. He activated the panic button on April 17, 2006. Crawford acknowledged the duress call. Plaintiff informed her of his asthma and that he was having impaired breathing due to unknown fumes entering his cell. Plaintiff requested immediate removal from his cell to an unpolluted area, which would have been the outside recreation area. Crawford did not notify the medical department of the plaintiff's breathing difficulties. Three other inmates tried to notify Crawford about the seriousness of plaintiff's condition. Defendants Havery and John Doe #3 arrived on the range to return prisoners to their cells, ignored plaintiff's pleas for help, and left plaintiff suffering an asthma attack, which caused him to pass out.

Defendant Crawford moves for summary judgment on the ground that she is entitled to qualified immunity because the undisputed evidence shows that she was not deliberately indifferent to the plaintiff's medical needs. Crawford joins in and incorporates by reference the other defendants' motion for summary judgment (Docket No. 190) but adds a few additional facts.

Rule 56(c)(2) provides that summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). "A party seeking summary judgment bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, interrogatories, and admissions on file together with affidavits, if any, which it believes demonstrate the absence of genuine issues for trial." Robertson v. Board of County Comm'rs of the County of Morgan, 78 F. Supp.2d 1142, 1146 (D. Colo. 1999) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Mares v. ConAgra Poultry Co., 971 F.2d 492, 494 (10th Cir. 1992)). "Once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in the complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried. . . . These facts may be shown 'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings by themselves.'" Southway v. Central Bank of Nigeria, 149 F. Supp.2d 1268, 1273 (D. Colo. 2001), aff'd, 328 F.3d 1267 (10th Cir. 2003).

"Summary judgment is also appropriate when the court concludes that no reasonable juror could find for the non-moving party based on the evidence presented in the motion and response." Id. "The operative inquiry is whether, based on all documents submitted, reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . . Unsupported allegations without 'any significant probative evidence tending to support the complaint' are insufficient . . . as are conclusory assertions that factual disputes exist." Id.; Robertson, 78 F. Supp.2d at

1146 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); quoting White v. York Int'l Corp., 45 F.3d 357, 360 (10th Cir. 1995)). "Evidence presented must be based on more than 'mere speculation, conjecture, or surmise' to defeat a motion for summary judgment." Southway, 149 F. Supp.2d at 1274. "Summary judgment should not enter if, viewing the evidence in a light most favorable to the non-moving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party." Id. at 1273.

"[P]risoners have an Eighth Amendment right to adequate medical care . . . ." Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001). "In keeping with the principle that government officials are generally afforded wide latitude when fulfilling their discretionary functions, . . . however, in cases where prisoners allege that inadequate or delayed medical care violated their Eighth Amendment rights, it has been established that '[p]rison officials violate the Eighth Amendment [only] when they are deliberately indifferent to the serious medical needs of prisoners in their custody.'" Id. However, "a delay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm. . . . The substantial harm may be satisfied by lifelong handicap, permanent loss, or considerable pain." Mata v. Saiz, 427 F.3d 745, 751 (10th Cir. 2005) (quotations omitted).

"The test for constitutional liability of prison officials 'involves both an objective and a subjective component.'" Id. As the Tenth Circuit has explained:

> to properly set forth an Eighth Amendment claim on which relief may be granted, [the prisoner] must set forth facts demonstrating [1] that his alleged medical need . . . was sufficiently serious to meet the objective element of the deliberate indifference test, and [2] that the Defendants' delay in meeting that need caused him substantial harm. . . . Finally, to

meet the subjective element of the deliberate indifference test, [the prisoner] must allege facts supporting an inference [3] that Defendants knew about and disregarded a substantial risk of harm to his health or safety.

Oxendine v. Kaplan, 241 F.3d at 1276-77 (quotations omitted).

Here, Crawford's Declaration submitted with her motion includes the following. She recalls plaintiff's name, but she does not have a specific memory of who he is. (Docket No. 205-2, Crawford Dec. at 2, ¶ 5). She does not recall a time when she was working in the control center ("bubble") when an ADX inmate activated his duress button to which she did not respond. (Docket No. 205-2 at 2, ¶ 6). The bubble is an enclosed area that does not allow the officer working inside to see into an inmate's cell, hear the inmate without him communicating through the intercom system, or to leave his or her post. (Docket No. 205-2 at 2, ¶¶ 7, 12). If an ADX inmate activated his duress button with a medical emergency, she would have notified the medical department as well as another correctional officer to go to that inmate's cell to determine the nature of the problem and to provide assistance to the extent possible. (Docket No. 205-2 at 2, ¶ 8). If there was a medical emergency, she would have notified the medical department to send assistance. (Docket No. 205-2 at 2, ¶ 9). In order to turn off the alarm, it must be done at the inmate's cell. (Docket No. 205-2 at 2, ¶ 10). Even if an inmate's duress button was turned off, if medical assistance was not provided, the inmate could simply re-activate the alarm. (Docket No. 205-2 at 3, ¶ 20). In any event, the intercom continues to operate even after the duress button is activated to allow communication between the inmate and the officer in the bubble. (Docket No. 205-2 at 3, ¶ 13). Plaintiff could have also communicated with other staff in the area or other inmates who

could have activated their duress alarms to summon help or by contacting staff who would have been on the range. (Docket No. 205-2 at 3-4, ¶ 21). At no time was she aware of an inmate at the ADX who was suffering from a medical condition for whom she did not seek to have assistance provided or for whom medical assistance was not provided. (Docket No. 205-2 at 3-4, ¶¶ 14, 22). At no time was she aware of an inmate who activated his duress button who was not responded to by other officers. (Docket No. 205-2 at 3, ¶ 15). She does not recall seeing plaintiff or any other ADX inmate who was having breathing difficulties. (Docket No. 205-2 at 3, ¶¶ 16, 19). She would not have had the ability to remove plaintiff from his cell to an outside area on April 17, 2006, because she was not able to leave her post in the bubble. (Docket No. 205-2 at 3, ¶ 17). She does not have any medical training, so she would have had to obtain assistance from the medical department to provide the inmate assistance. (Docket No. 205-2 at 3, ¶ 18). At all times relevant to the allegations made by plaintiff here, she acted in good faith and did not take any action against plaintiff that was in violation of Bureau of Prisons policies or the law. (Docket No. 205-2 at 4, ¶ 23).

In his Response (Docket No. 213) plaintiff asserts, *inter alia*, that Crawford's statements are in conflict with her own statements and all of the evidence provided by the plaintiff. More specifically, he contends that Crawford informed ADX Warden Wiley that she did call the medical department (citing Docket No. 202, Exhibit 42), but the medical department stated that she did not contact them (citing Docket No. 202, Exhibit 19). In addition, plaintiff asserts that no officer or medical went to his cell after he activated his duress button (citing Docket No. 202, exhibit 38).

This court finds that there is a genuine issue of material fact with respect to

whether Crawford was deliberately indifferent to plaintiff's alleged need for immediate medical care. In her Declaration, Crawford states she does not recall a time when she was working in the bubble when an ADX inmate activated his duress button to which she did not respond. (Docket No. 205-2 at 2, ¶ 6). In addition, she states that at no time was she aware of an inmate at the ADX who was suffering from a medical condition for whom she did not seek to have assistance provided or for whom medical assistance was not provided. (Docket No. 205-2 at 3-4, ¶¶ 14, 22).

In contrast, plaintiff claims in his Declaration (Docket No. 161-2 at 3, ¶ 6) that he and three other inmates (Jeff Jackson, Michael Thomas, and Scott Thomas) pushed the duress button because plaintiff was having impaired breathing, yet Crawford did not respond. Plaintiff has filed the Affidavit of Scott Cody Hudson concerning the incident on April 17, 2006, in which Hudson states in pertinent part:

> . . . I heard my neighbor Ralph Mercado in cell 103 speaking with the bubble officer about his asthma and his breathing due to the fumes, he asked to be taken out of his cell to an upolluted [sic] area as authorized by a medical slip he had.
>
> I can futher [sic] state no one reset Mercado's duress, no one came, unit officers or medical staff to attend to him, I pressed my duress informing the female officer that Mercado needed medical attention, she told me its none of my business- I personally saw another inmate inside the recreation area directly in front of my and Mercado's cell press his recreation button numerous times telling the bubble officer Mercado needed medical, she told him the same response, I heard Mercado's other neighbor do the same with the same out come.
>
> I personally heard Mercado plea with the unit officers taking the inside recreation inmates to their cells for help and medical attention, their response was "wait a minute" but they never attented [sic] him, after a few minutes later, I was unable to get a response from Mercado's cell verbally. I then feared the worst since he was ignored about his asthma attack.

(Docket No. 162 at 39-40). In addition, plaintiff claims Crawford informed ADX Warden

Wiley that she did call medical department (citing Docket No. 202, Exhibit 42; see Docket No. 162 at 41), but the medical department stated that she did not contact them (citing Docket No. 202, Exhibit 19).  Also, plaintiff has filed a copy of a note purportedly written by plaintiff to the ADX Medical Records Department dated June 19, 2006, in which he states:

> I am being told that Ms. Crawford Echo Unit Control Center Officer on April 17, 2006, notified Health Services Department of my medical needs.  Please provide me with evidence of this.
>
> I am also told that Medical Personnel (PA) after being notified by Ms. Crawford responded to my medical issue.  Please provide me with evidence of this.
>
> Any other information/records concerning April 17, 2006 is also requested.

(Docket No. 25 at 31; Docket No. 162 at 42).  The written notation under that note states: "Mr. Mercado - I do not see any entry for 4/17/06.  There is an entry for 4/16/06, 4/18/06, but nothing for 4/17/06. There is no where else a call from unit officer's would be documented.  You were already sent copies of your medical records dated 10/6/05 through 4/18/06. Y. Fetterhoff."  (Docket No. 25 at 31; Docket No. 162 at 42).

Based upon these conflicting statements, this court finds that there is a genuine issue of material fact with respect to whether Crawford ignored meeting plaintiff's serious medical need and whether Crawford knew or disregarded a substantial risk of harm to plaintiff's health or safety.  Therefore, summary judgment should not be entered for either the plaintiff or the defendant on this claim.

**WHEREFORE,** for the foregoing reasons, it is hereby

**RECOMMENDED**  Defendant Crawford's Motion for Summary Judgment, filed

13

on December 14, 2009 (Docket No. 205) be **denied**. It is further

**RECOMMENDED** plaintiff's "Declaration for Entry of Default" (Docket No. 210) be **denie**d. It is further

**RECOMMENDED** that plaintiff's Motion for Default Judgment Against Defendant Crawford (Docket No. 214) be **denied**.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dep't of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**


Date: March 12, 2010                s/ Michael J. Watanabe
      Denver, Colorado                Michael J. Watanabe
                                                    United States Magistrate Judge